We'll hear argument next and it will be the Generali U.S. Branch 22336. We'll hear argument next and it will be the Generali U.S. Branch 22336. Hold on a second, counsel. Please proceed. Good morning. Jameson Etzel for the appellants. I'd like to reserve two minutes for rebuttal, please. Thank you. So the first and biggest error by the district court was allowing a general exclusion to completely destroy a specific coverage provision. Isn't that what general exclusions sometimes do? Well, sometimes, but typically in an all-risk policy, which this is not. This is a named peril policy, so the named peril must exist in some sense. Now, in order to test that, to test whether the coverage exists, you have to come up with a realistic coverage scenario that would not be excluded. The problem here is that the reading of the certain area exclusion that the district court gave to this provision doesn't leave any possibility of the quarantine coverage. Every quarantine is a travel restriction for a certain area. That's what it always reduces to. And to the extent that General Ali argues in their opposition that that's an unnatural reading of certain area exclusion, it's exactly how it operates against our insured's circumstances. So we had insureds who were under stay-at-home orders, most of them, that applied statewide. There were broad orders that just said you may not do unnecessary travel, and there were certain exceptions. You could go to the grocery store, but you couldn't travel for leisure. I mean, especially in Oregon, the Garner plaintiff, it was a misdemeanor for her to go on recreational travel. And that is a restriction imposed for a certain area by a government entity or authority, rather. Right, but so is any – again, our point is so is any quarantine then. Any quarantine is – So if I – So it's illusory. If I test positive for COVID-19 today and I self-quarantine, does that qualify or not? Well, it would not be covered because, as General Ali pointed out down below, the coverage provision actually requires enforced isolation. That's how it defines quarantine. So there must be an enforcer. There must be some governmental order that's operating. Well, what if it's a – in my case, what if it's a court protocol? Is that a government authority? I would wager it is. So, I mean, obviously our position is – My – I think the point of my question, I'm really trying to understand your position. And I will just tell you I'm having a little bit of a hard time understanding it. There appears to be a mismatch, right, between, to me, the term quarantine and the term restriction imposed for a certain area by government authority. So – and you, I think, are arguing that there's a perfect overlap. And that does not strike me as correct. I wouldn't say it's a perfect overlap. I would say if there's a Venn diagram of travel restrictions for a certain area, quarantines are fully enclosed in that Venn diagram. And, therefore, there is no coverage under this policy. It's illusory. And so insurance law gives a path out of this, which is when there's that kind of clash, when an exclusion would completely destroy a specific coverage provision, you have to treat the coverage provision as overriding the exclusion. You want us to rewrite the general exclusion essentially based on a theory of an interpretation of complete overlap between quarantine and the travel restriction for a certain area. And it seems to me the natural reading, I mean, there is certainly going to be overlap. That's what happens when you have an exclusion for covered areas. You've posited a theory of interpretation, which I think is a little hard to get to. Under that theory of interpretation, there's complete overlap. But I'm not sure that that gets us around to accepting your interpretation. Well, I think if we break it down, like, what is a government-imposed quarantine? It takes somebody or some person or some area and it sets up a barrier. Well, it's aimed at the person. It's aimed at an individual. By definition in the provision, it's the enforced isolation of you or your travel companion. So it's about taking a sick person and not letting them leave. The travel restriction is aimed at an area, imposed for a certain area. So you've got a person-focused restriction and an area-focused restriction. And those are terminologically different things. Well, no, I would argue they're not, because the insureds here were subject to these orders. It's not like they had nothing to do with them. The orders applied to them. So the notion that you needed to be sick first or you need to be individually named in some order, that's not in the policy. It's just some enforced isolation that's applicable to the insured and prevents their travel. And that's exactly what happened to these people. A quarantine can be drawn around a district. It's not just a person-by-person concept. It wasn't that way 200 years ago. It's not that way now. Quarantines applied to ships. Quarantines were cordon sanitaires drawn around areas. And no one could leave or no one could come in. So it's just about the scale. But it is functionally exactly the same thing. And all of these people were prevented from going on their trips by law. There's Hawaii, you could not enter or you would be quarantined for 14 days. That's a quarantine that prevents or prevented our insured Sharma from going to Hawaii. Again, Garner could not travel because Oregon said it was a misdemeanor to go on vacation. Preventing someone from going to Hawaii, how is that an enforced isolation? Well, it's because the person's isolated from Hawaii, which was the insured trip. The whole purpose of the insurance was to protect against a specific trip. The person was not allowed to go to Hawaii. Our other insured was not allowed to go to Costa Rica. Well, I guess focus on isolation. How is it enforced? Isolation. It seems like you're just reinterpreting that as enforced travel restriction. No. No. I mean, it's what is the reference point? And the reference point is the insured, the traveler who wants to go somewhere. If they can't go there, they're isolated from it by operation of law. It's separation. It's isolation. It's just about can you go to where you insured your trip. So you're isolated from Hawaii. You're isolated from Costa Rica. Isolated from Florida. You can't go there by law. I'll save the rest of my time. Thank you so much. May it please the Court, I'm Archus Parasharami for the Generali defendants. Generali recognizes the tragic nature of the pandemic. And in response to one of the questions asked, when individuals have become ill from COVID-19, Generali has routinely covered their travel insurance claims. But the travel insurance policies here, as the questions before reveal, don't cover all risks no matter what. They cover a limited set of enumerated risks that are then subject to certain identified exclusions. And that principle calls for affirmance on two grounds. First, plaintiffs didn't state a claim for coverage at all. As I think Judge Nathan's questions underscore, they weren't subject, the plaintiffs weren't subject to enforced isolation within the meaning of the policy. And Your Honor read precisely what the policy says, enforced isolation of you or your travel companion. That didn't happen. And there are three plaintiffs who asserted coverage under the other natural disaster coverage. And for the reasons we've explained in the briefs, that coverage doesn't apply either. That's before you even get to the general travel exclusion, the government travel, the exclusion on government travel restrictions. And I think the questions, again, indicate why that set of restrictions applies. And so those two independent reasons fully support the district court's decision below. You know, from the prior presentation, I don't want to take up the Court's time going through, you know, the details of the argument. But, you know, I'm happy to answer the Court's question. Can I ask, one of the arguments you make is about whether it's a covered event is that it has to happen, the covered event has to occur before departure. Right. I noticed that the quarantine is coupled together with hijacking. Right. How could a hijacking happen before a covered event? And it's not relevant to this particular case, but I'm just trying to imagine whether this could, accepting your opposing counsel's argument that this is essentially coverage that doesn't exist, it's illusory. And that struck me as an example of illusory coverage. Do I have that wrong? Well, so I don't think it's illusory. But to the extent, I mean, and the illusoriness comes in where there is an exclusion. That's sort of the place for the illusoriness argument. I don't think that's presented here. I think Your Honor presents it. That's a very interesting question about whether, you know, if being hijacked occurs. I guess it occurs in trip, in a sense. Or it could be before departure. Yeah. I don't mean to sidetrack you. No, no. It just struck me as an odd provision when you make the argument about timing. Well, and I think one thing that's interesting is that there is also hijacking coverage, I believe, for during the trip. So there's trip, so this policy has trip cancellation coverage and it has trip interruption coverage and trip delay coverage. And so to the extent that the hijacking doesn't fit neatly into the trip cancellation, and I see Your Honor's point. But then your trip is undoubtedly interrupted, I would say, horribly so, by a hijacking. And so it would be covered. It applies at some stage. It applies. Exactly right, Your Honor. It applies at some stage. Anything else? I don't think so. Thank you very much. Thank you. So I would just like to, I guess, draw the Court's focus back to the standard that would apply here. It's a reasonable interpretation. If the insured has a reasonable expectation of coverage under the policy language, then the correct answer is there is coverage. And what happens Is this the only action of its sort in the country or are there other? There have been a few. Okay. Do you know what the results have been? So the most notable one is one that the Sixth Circuit heard, the DePasquale case. And I think if you trace the reasoning in that decision, it falls apart. They say, well, we're not imposing complete isolation as the standard. And for the record, the order they were considering there was the Oregon stay-at-home order, which applied to one of our plaintiffs also. They said, we're not imposing complete isolation as the standard. And then when they go and they say these plaintiffs weren't isolated, they say, well, it's because they could do some things like go to the grocery store. Is there anywhere else where this argument that you invite us to embrace has prevailed? I think there have been a few district court cases where I think the Arch insurance case in the Eastern District of Pennsylvania got through Rule 12, which is where we were dismissed here. But I don't think there have been any other circuits to look at this issue. But back to the Sixth Circuit, they say we're not imposing strict isolation. Any state courts? I don't know for certain. I mean, I think if we had a great one, we would have cited to it. That's why I'm asking. Yeah. But I think most of the ones that they're citing to are not on point either. The DePasquale case is the best one to look at. But they came to the wrong result. They said we're not imposing strict isolation. But since you could go to the barbecue, you weren't isolated enough under the policy. But they just passed right over the fact that the people were isolated from Mexico, which is where they wanted to go and where they had an insured trip to go. They were isolated from the place that they had insured a trip to go to. And I'd say that's the most relevant type of isolation is can you go? Would anyone say that in ordinary parlance? I was isolated from France. I was isolated from Russia. Well, sure. If you're on the boat off the harbor and they say you can't land here, you're isolated from that place. Or you're restricted from traveling to that place. Sure. But that's, you know, the ship example is the classic quarantine. It's the most familiar example anyone could think of. And if that's not covered under these policies, I think that's illusory coverage. Thank you. Thank you very much. We'll reserve the decision.